**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MELISSA LYNCH,**<br>2246 S Street SE<br>Washington, D.C.  20020<br><br>          **Plaintiff,**<br><br>     **v.**<br><br>**APPLE INC.,**<br>One Apple Park Way<br>Cupertino, CA 95014<br><br>          **Defendant.** | Case No.  **1:21-cv-01336** |

<u>**NOTICE OF REMOVAL**</u>

# EXHIBIT A

D.C. Superior Court Complaint

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **MELISSA LYNCH,** ) | |
| **2246 S St., SE** ) | |
| **Washington, DC 20020.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **APPLE, INC.,** ) | |
| **1 Apple Park Way** ) | **Case No. _____** |
| **Cupertino, CA 95014,** ) | |
| ) | |
| **Serve Resident Agent:** ) | |
| ) | |
| **CT Corporation System,** ) | |
| **1015 15th St., NW** ) | |
| **Ste. 1000** ) | |
| **Washington, DC 20005,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Melissa Lynch, by and through counsel, files this Civil Complaint against

Defendant Apple, Inc. for disability discrimination and retaliation in violation of the District of

Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.* ("DCHRA"), and for retaliation in

violation of the District of Columbia's Family and Medical Leave Act ("DCFMLA"), D.C. Code

§ 32-501, *et seq.*

## PARTIES

1.       Lynch resided and was employed by Defendant in the District of Columbia at all

times relevant to this complaint, from the start of her employment with Apple until August 2020.

2.      Apple, Inc. is a California corporation with its principal place of business at 1 Apple Park Way, Cupertino, California 95014.

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over Apple, Inc. because it regularly conducts business in the District of Columbia and maintains regular and systematic contacts with the District of Columbia.

4.      This Court has subject matter jurisdiction over the claims in this Complaint brought under the laws of the DCHRA, D.C. Code § 2-1404.01, *et seq.* and the DCFMLA, D.C. Code § 32-501, *et seq.*

5.      Venue is proper in this Court because it is the judicial district where the unlawful employment practices are alleged to have been committed.

## FACTUAL ALLEGATIONS

6.      Apple hired Lynch in or about 2010 as a Senior Manager at Apple's Bethesda, Maryland retail store.

7.      Apple promoted Lynch to Store Leader for two Apple retail stores in the Annapolis, Maryland region toughly four months after hiring her.

8.      Apple again promoted Lynch in or about 2012 to Market Leader for Maryland. Lynch served as intermediate management as a Market Leader between Apple's retail stores and corporate offices.

9.      In or around 2014 Apple transferred Lynch from Market Leader for the Maryland region to Market Leader for Virginia, where it based her out of Virginia Beach, Virginia.

10.     Apple again transferred Lynch from Virginia back to Maryland in or around early 2017.  Lynch then oversaw four retail stores in Maryland in her new position, including stores in Annapolis, two stores in Bethesda, and Columbia, as well as one store in Pennsylvania.

11.     Lynch reported directly to Heidee Albany, Apple Market Director after returning to be Apple's Market Leader for Maryland.

12.     Lynch worked out of her Washington, D.C. home in role as Market Leader for Maryland from 2017 through her termination.

13.     Apple conducts performance reviews for employees on a quarterly basis. Direct supervisors issue each employee one of the following three performance ratings from their: "exceeds expectations," "achieves expectations," or "expected more."

14.     Apple issued strong performance reviews to Lynch from Quarter one, 2017, until Quarter two, 2019, with Albany rating her either "meets expectations" or "achieves expectations" each successive quarter.

15.     Apple hired Deidre O'Brien to be its new Senior Market Director in or around February 2019, and in this capacity she was Lynch's third-line supervisor, as Albany reported to Denny Tuza, and Tuza reported to O'Brien. O'Brien was a 30-year Apple employee at the time of her placement into the Senior VP of Retail.

16.     Albany first criticized Lynch's performance during a routine one-on-one talent planning meeting on or about February 21, 2019.  Albany told Lynch that she purportedly needed to work on how she rated new store leaders after Lynch wrote that a new store leader, Jen Rupp, was "in over her head."

17.     Albany began contacting Lynch's direct reports to ask about Lynch's communication style in or around late April and early May of 2019, and Albany

contemporaneously directed Lynch not to speak with her direct reports, effectively cutting off a line of communication with her team.  Albany did not implement such restrictions on any other Market Leader.

18.     Albany first mentioned to Lynch that Apple might place Lynch on a "documented coaching" plan on or about May 16, 2019.  Lynch responded by reporting that Albany was targeting Lynch for harassment.  Lynch reported Albany's threat and harassment to Ashley Gore, one of Apple's HR Business Partners, but Gore did not follow up with Lynch to learn any further details about her report.

19.     On or about June 27, 2019, Albany placed Lynch on a documented coaching, which was to last for sixty days. Lynch then took previously scheduled vacation leave from on or about June 28, 2019, through on or about July 6, 2019. Lynch then took sick leave from on or about July 7, 2019, through on or about July 13, 2019, due to anxiety and panic attacks precipitated by Albany's harassment.

20.     Albany took a leave of absence from Apple from on or about July 1, 2019, through on or about August 22, 2019.  Lynch reported to Jason Barlia, Apple's Market Director for New York, during Albany's absence, and Barlia issued to Lynch good performance remarks for this management period.

21.     On or about July 23, 2019, Lynch again reported her complaints of harassment to Annetta Merrifield in Apple's Employee Relations Department.

22.     Albany returned from her leave of absence on or about August 22, 2019.  Albany informed Lynch upon her return that Albany was extending Lynch's documented coaching because Albany had been out on a leave of absence.  However, Albany failed to provide Lynch with details about the extended documented coaching's new duration, and Albany's actions

prevented Lynch from receiving a $6,000 bonus for meeting her performance objectives for April, May, and June, a period that pre-dated the coaching implemented by Albany.

23.     Lynch again requested assistance from Merrifield in Employee Relations in or around late August or early September 2019.  In response Merrifield told Lynch that "this was a performance issue, not a policy issue" and as such "was beyond the scope of Employee Relations."  However, Merrifield also disclosed that Apple previously conducted an internal investigation into Albany's behavior in 2015 for harassing another store leader.  Merrifield further reported that Albany was "not a great leader."

24.     Lynch took DCFMLA on or about October 2, 2019, after being diagnosed with stress-induced gastritis precipitated by Albany's harassment of Lynch.

25.     Maryland reported its first community spread of COVID-19 in or around early March 2020, and on or about March 12, 2020, Governor Larry Hogan raised the Maryland Emergency Management Agency activation level to high and announced sweeping measures to prevent COVID-19 community spread, including closing Maryland's schools to any in-person instruction, prohibitions on mass gatherings, and issuing a stay-at-home order.  This resulted in retailers, including Apple, closing their retail stores.

26.     Lynch returned from DCFMLA leave on or about April 1, 2020, during the COVID-19 pandemic, and she could not complete some regular job duties with Apple's retail stores closed in Maryland. Nevertheless Albany implemented a "re-emersion plan" for Lynch upon her return from DCFMLA leave.

27.     Albany informed Lynch on or about June 15, 2020, that Lynch that the documented coaching would only last for another thirty days. However, Albany resumed criticizing Lynch and her performance on or about June 24, 2020, when Albany explained that

Lynch had been absent on DCFMLA leave for several months and this could not be taken off the documented coaching because of her taking DCFMLA leave. Apple then terminated Lynch's employment on or about August 3, 2020.

28.    Lynch has sustained economic damages and mental anguish due to Apple's illegal actions, and she will continue to sustain damages into the foreseeable future.

**COUNT I**
**D.C. Family Medical Leave Act**
**D.C. Code § 32-501, *et seq*.**
**Discrimination**

29.    Lynch incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

30.    Apple is an employer as defined by the DCFMLA.

31.    Lynch is an employee as defined by the DCFMLA.

32.    Lynch had a right under the DCFMLA to take sixteen (16) work weeks of leave during any twenty-four (24) month period for a serious health condition.

33.    Lynch took DCFMLA leave from October 2, 2019 until April 1, 2020.

34.    Lynch suffered an adverse action on August 7, 2020, when Apple terminated her employment.

35.    Apple discriminated against Lynch by terminating her employment because she had taken DCFMLA leave.

36.    Apple's stated and forthcoming reasons for terminating Lynch are pretext for unlawful discrimination.

37.    Lynch has been damaged as a result of the unlawful acts of Apple.

38.    Accordingly, Lynch demands such legal or equitable relief as will effectuate the purposes of the DCFMLA, including, but not limited to economic damages, liquidated damages,

reasonable attorney's fees and costs, pre-judgment interest, and any other relief that this Court deems just and equitable.

**COUNT II**
**D.C. Family Medical Leave Act**
**D.C. Code § 32-501,** *et seq.*
**Retaliation**

39.     Lynch incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

40.     Apple is an employer as defined by the DCFMLA.

41.     Lynch is an employee as defined by the DCFMLA.

42.     Lynch had a right under the DCFMLA to take sixteen (16) work weeks of leave during any twenty-four (24) month period for a serious health condition.

43.     Lynch engaged in protected activity under the DCFMLA from October 2, 2019 until April 1, 2020, by exercising her right under the DCFMLA to take leave.

44.     Lynch suffered an adverse action on August 7, 2020, when Apple terminated her employment.

45.     Apple retaliated against Lynch by terminating her employment in retaliation for Lynch exercising her rights under the DCFMLA.

46.     Apple's stated and forthcoming reasons for terminating Lynch are pretext for unlawful discrimination.

47.     Lynch has been damaged as a result of the unlawful acts of Apple.

48.     Accordingly, Lynch demands such legal or equitable relief as will effectuate the purposes of the DCFMLA, including, but not limited to economic damages, liquidated damages, reasonable attorney's fees and costs, pre-judgment interest, and any other relief that this Court deems just and equitable.

<u>**COUNT III**</u>
**D.C. Human Rights Act**
**D.C. Code § 2-1402,** *et seq.*
**Discrimination Based on Disability**

49.     Lynch hereby incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

50.     Lynch is an "employee" as defined in D.C. Code § 2-1401.02 (9).

51.     Apple is an "employer" as defined in D.C. Code § 2-1401.02 (10).

52.     Lynch has disabilities as defined D.C. Code § 2-1401.02 (5A).

53.     Lynch was qualified for her position, as the Defendant issued her positive performance reviews until she disclosed her disabilities.

54.     Apple took materially adverse actions against Lynch because of her disability or perceived disability when it terminated her employment.

55.     Apple has no legitimate business reasons for the adverse action it has taken against Lynch.

56.     Apple's stated reasons for the adverse action it took against Lynch are pretextual.

57.     Lynch sustained damages as the result of Apple's illegal discrimination in violation of the DCHRA, including, but not limited to, damage to her career, and emotional, mental, and physical distress and anxiety.

58.     Accordingly, Lynch is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including but not limited to economic and compensatory damages, injunction, and reasonable costs and attorney's fees.

## COUNT IV
**D.C. Human Rights Act**
**D.C. Code § 2-1402, *et seq.***
**Retaliation**

59.     Lynch hereby incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

60.     Lynch is an "employee" as defined in D.C. Code § 2-1401.02 (9).

61.     Apple is an "employer" as defined in D.C. Code § 2-1401.02 (10).

62.     Lynch has disabilities as defined D.C. Code § 2-1401.02 (5A).

63.     Apple took materially adverse actions against Lynch in retaliation for her protected complaints of harassment when it terminated her employment.

64.     Apple has no legitimate business reasons for the adverse action it has taken against Lynch.

65.     Apple's stated reasons for the adverse action it took against Lynch are pretextual.

66.     Lynch sustained damages as the result of Apple's illegal retaliation in violation of the DCHRA, including, but not limited to, damage to her career, and emotional, mental, and physical distress and anxiety.

67.     Accordingly, Lynch is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including but not limited to economic and compensatory damages, injunction, and reasonable costs and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays this Honorable Court for the following relief:

    A.  Judgment against the Defendant in the amount of economic damages, compensatory damages, liquidated damages, and punitive damages to be determined at trial;

B.  Pre-judgment interest;

C.  Employment, reinstatement, promotion, or other equitable relief;

D.  Economic damages including front pay and back pay;

E.  Compensatory damages;

F.  Punitive damages;

G.  Interest due on unpaid wages;

H.  Reasonable attorneys' fees and costs of this action; and

I.  Any other relief this Honorable Court deems just and proper to award.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,

<u>/s/ Kellee Boulais Kruse</u>
R. Scott Oswald, DC Bar # 458859
Kellee Boulais Kruse, DC Bar # 994450
The Employment Law Group, P.C.
888 17th Street, N.W., 9th floor
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
kkruse@employmentlawgroup.com
*Counsel for Plaintiff*